# 15-2702

## United States Court of Appeals
## For the Second Circuit

JESMAIN SIDDIQUA,

*Plaintiff-Appellant,*

-against-

NEW YORK STATE DEPARTMENT OF HEALTH,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of New York

### BRIEF OF DEFENDANT-APPELLEE

BARBARA D. UNDERWOOD
 *Solicitor General*
ANDREA OSER
 *Deputy Solicitor General*
KATE H. NEPVEU
 *Assistant Solicitor General*
  *of Counsel*

ERIC T. SCHNEIDERMAN
 *Attorney General*
 *of the State of New York*
Attorney for Defendant-Appellee
The Capitol
Albany, New York 12224-0341
(518) 776-2016

Dated: November 18, 2015

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES....................................................................iii

PRELIMINARY STATEMENT..............................................................1

ISSUES FOR REVIEW ..........................................................................2

STATEMENT OF THE CASE ................................................................3

     A.   Statutory Background..............................................................3

     B.   Factual Background ...............................................................4

     C.   Arbitration Proceedings and Decision ..................................6

     D.   State Court Proceedings ......................................................10

     E.   Proceedings and Decision Below..........................................12

STANDARD OF REVIEW....................................................................14

SUMMARY OF THE ARGUMENT ......................................................15

ARGUMENT

     THE DISTRICT COURT PROPERLY DISMISSED THE
     COMPLAINT AS BARRED BY COLLATERAL ESTOPPEL......16

     A.   Plaintiff Is Collaterally Estopped from Arguing that
          She Gave Notice that She Was Taking Leave for FMLA
          Purposes. ...............................................................................16

          1.   Preclusive effect may be given to an arbitration
               decision under the doctrine of collateral estoppel.........17

          2.   Plaintiff had a full and fair opportunity to litigate
               the issue of notice in the arbitration proceeding...........22

i

**TABLE OF CONTENTS (cont'd)**

**PAGE**

    B.    Because Plaintiff Failed to Give Notice that She Was Taking Leave for FMLA Purposes, She Cannot Bring Claims Under the FMLA. ................................................... 26

CONCLUSION ..................................................................... 31

ADDENDUM (Missing Page from Arbitrator's Decision) .................. AD1

# TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE**

*Alexander v. Gardner-Denver Co.,*
  415 U.S. 36 (1974) .............................................................. 13, 18, 19. 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................... 15

*Benjamin v. Traffic Executive Assoc. Eastern Railroads,*
  869 F.2d 107 (2d Cir. 1989) ...................................... 18, 20, 21

*Boguslavsky v. Kaplan,*
  159 F.3d 715 (2d Cir. 1998) ........................................... 18, 20

*Brown v. Kan. City Freightliner Sales, Inc.*
  617 F.3d 995 (8th Cir. 2010).......................................... 27, 30

*Burkybile v. Bd. of Educ.,*
  411 F.3d 306 (2d Cir. 2005) .................................................. 19

*Collins v. NTN-Bower Corp.*
  272 F.3d 1006 (7th Cir. 2001)............................................... 27

*Dunn, Matter of,*
  24 N.Y.3d 699 (2015) ............................................................ 24

*14 Penn Plaza LLC v. Pyett,*
  556 U.S. 247 (2009)........................................................... 19, 20

*Golden v. N.Y. City Dep't of Envtl. Prot.,*
  354 Fed. Appx. 577 (2d Cir. 2009)....................................... 27

*Guimarales, In re Claim of,*
  68 N.Y.2d 989 (1986) ............................................................ 25

*Jacobson v. Fireman's Fund Ins. Co.,*
  111 F.3d 261 (2d Cir. 1997) ...................................... 18, 20, 23

# TABLE OF AUTHORITIES (cont'd)

**CASES (cont'd)**                                                                **PAGE**

*Kaufman v. Eli Lilly & Co.,*
    65 N.Y.2d 449 (1985) ........................................................................ 23-24

*Littlejohn v. City of New York,*
    795 F.3d 297 (2d Cir. 2015) ................................................................ 14

*Montana v. United States,*
    440 U.S. 147 (1979) ............................................................................ 17

*Postlewaite v. McGraw-Hill, Inc.*
    333 F.3d 42 (2d Cir. 2003) ............................................................ 17, 23

*Ranni, In re Claim of,*
    58 N.Y.2d 715 (1982) .......................................................................... 24

*Sista v. CDC Ixis N. Am., Inc.*
    455 F.3d 161 (2d Cir. 2006) ............................................................ 4, 28

*Univ. of Tennessee v. Elliott,*
    478 U.S. 788 (1986) .......................................................................... 23n

*Walton v. Ford Motor Co.,*
    424 F.3d 481 (6th Cir. 2005) .............................................................. 27

**FEDERAL STATUTES**

29 U.S.C.
    §§ 2601-2654 ........................................................................................ 1
    § 2612(a)(1)(C) .................................................................................... 3
    § 2612(e)(2)(B) .............................................................................. 3, 26
    § 2614(a) .............................................................................................. 3
    § 2614(b) .............................................................................................. 3
    § 2615(a) .............................................................................................. 4
    § 2417(a)(2) .......................................................................................... 4

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

## FEDERAL RULES AND REGULATIONS

29 C.F.R.

§ 825.301(b) ............................................................... 3, 26, 27, 29
§ 825.302(a) ........................................................................ 3, 26
§ 825.303(a) ........................................................................ 3, 26

Federal Rules of Civil Procedure

12(b)(6) ........................................................................... 12, 14

## STATE STATUTES

C.P.L.R

§ 306-b ............................................................................... 11
§ 7511 ................................................................................ 10
§ 7511(b) ............................................................................ 11

## PRELIMINARY STATEMENT

Plaintiff Jesmain Siddiqua alleges that defendant New York State Department of Health violated her rights under the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601-2654, when it terminated her employment upon her return from an extended FMLA leave. Plaintiff was absent from her job for nearly seven weeks, and the Department thereafter found her guilty of employee misconduct. Plaintiff challenged the finding of misconduct in a disciplinary grievance, which culminated in arbitration. In that proceeding, the arbitrator rendered a factual finding that plaintiff failed to notify the Department that her absence from work had anything to do with her need to take leave under the FMLA. The arbitrator consequently found that plaintiff was guilty of misconduct and upheld the proposed penalty of termination. The question presented in this action is whether the arbitrator's factual finding is entitled to preclusive effect here and, if so, whether it bars plaintiff's FMLA claims in federal court.

The district court properly answered both questions in the affirmative and dismissed the complaint. This Court should affirm.

Contrary to plaintiff's arguments, the district court properly found that plaintiff's FMLA claims were barred by collateral estoppel. First, an arbitrator's factual findings can be given preclusive effect through collateral estoppel, regardless of whether the arbitrator is authorized to resolve federal statutory claims, and the arbitrator's factual finding as to notice was properly given preclusive effect here. Second, the arbitrator's factual finding that plaintiff failed to notify the Department that her absence was an FMLA absence is fatal to her FMLA claims.

## ISSUES FOR REVIEW

1.  Whether, under the doctrine of collateral estoppel, preclusive effect should be given to a factual finding that was made by an arbitrator in the exercise of the arbitrator's agreed-upon powers and after plaintiff had a full and fair opportunity to litigate the issue.

2.  Whether the arbitrator's factual finding that plaintiff failed to notify the Department that her absence was an FMLA absence is fatal to her FMLA claims.

2

## STATEMENT OF THE CASE

### A.    Statutory Background

The FMLA entitles certain employees to take leave from work to, among other things, care for a parent with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). Employees must notify their employer that they intend to take FMLA leave, and must do so not less than thirty days in advance when possible, and as soon as practicable otherwise, including when the need is unforeseeable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R §§ 825.302(a), 825.303(a). It is the employee's responsibility to give timely notice. 29 C.F.R. § 825.301(b). Moreover, while the employee does not have to expressly invoke the FMLA, the employee "must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." 29 C.F.R. § 825.301(b).

Employees are generally entitled to be restored to their position (or its equivalent) upon their return from leave. 29 U.S.C. § 2614(a); *see id.* § 2614(b) (exempting certain highly compensated employees from restoration provision). Employers may not interfere with employees'

3

exercise of FMLA rights or discriminate against employees who oppose unlawful FMLA practices. 29 U.S.C. § 2615(a). The FMLA creates a private right of action for employees to enforce its provisions. 29 U.S.C. § 2617(a)(2). However, to make a claim that a termination of employment violated the FMLA, a plaintiff must show that the employer actually "considered [her] FMLA leave and request to return a negative factor in its decision." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006).

### B.    Factual Background

Plaintiff worked as an Information Technology Specialist 2, Grade 18, at the Department of Health for approximately five years before her employment was terminated in 2012. (Appendix at A5 ¶ 6.) In December 2010, she learned that her mother, who lives in Bangladesh, had stomach cancer. (A6 ¶ 7.) Plaintiff advised Pamela Morini, a Senior Personnel Administrator with the Department, that she would need to take leave pursuant to the FMLA so that she could care for her mother. (A6 ¶ 8.) Plaintiff did not yet know when she would need to begin her leave. (A6 ¶ 9.) But she claims that Morini approved her request on

condition that plaintiff provide a medical certification for her mother's condition upon her return from leave. (A6 ¶¶ 9-11.)

Plaintiff states that on Monday, March 28, 2011, she learned that her mother's condition had significantly worsened, and therefore she immediately made plane reservations to go to Bangladesh the following Monday, April 4, through May 20, 2011. (A6 ¶¶ 12-13, 15.) She claims that "[o]n several occasions during the week of March 28, [she] orally advised her supervisor, Michael Pettit" of her intentions to take FMLA leave shortly, and that Pettit did not object. (A6 ¶ 14.) Plaintiff also emailed Mr. Pettit to "advis[e] him that she would be absent" (A6 ¶ 15), but apparently gave no indication as to when she might return. When plaintiff returned from Bangladesh some seven weeks later, she provided Morini with the required medical certification of her mother's condition. (A7 ¶ 17.)

In June 2011, the Department served plaintiff with a notice of discipline charging that her absence from April 4 through May 20 was unauthorized. (A48-49.)[1] It eventually determined that she was guilty

---

[1] A second disciplinary charge was not sustained by the arbitrator. (A49, 61.)

and proposed a penalty of terminating her employment. (A49.) Pursuant to the collective bargaining agreement then in effect, plaintiff filed a disciplinary grievance that was appealed to arbitration. (A48, A71-72.)

## C.   Arbitration Proceedings and Decision

An arbitration hearing was held in December 2011. (A48.) At the hearing, plaintiff was represented by counsel, presented documentary and testimonial evidence, and cross-examined witnesses; she also submitted a post-hearing brief. (A48, A52.)

Pamela Morini, the Senior Personnel Administrator, testified that she had approved plaintiff's request to take FMLA leave conditional on plaintiff's providing medical documentation of her mother's condition, which could be done either during the visit or after plaintiff's return. (A51.) She conceded that she did not tell plaintiff the approval was only good for 15 days, but denied ever telling plaintiff that the conditional approval was "open ended," and testified that she gave plaintiff written documentation regarding her rights and obligations under the FMLA. (A51.)

6

Michael Pettit, plaintiff's supervisor, could not recall plaintiff telling him in March that she intended to take FMLA leave. (A51.) Plaintiff offered an email she allegedly sent him on March 29 regarding her leave, but the email was not introduced into evidence because "there was a serious question about [its] authenticity." (A56.) The email was used instead to refresh Pettit's recollection, and he did not recall ever seeing it. (A57.)

Pettit agreed that he had received an email from plaintiff dated Saturday, April 2, 2011, in which plaintiff informed him that she would be absent from work starting Monday, April 4, but did not mention either the FMLA or her mother's illness. (A51, A56.) The email's subject was simply "Out of Office," and in it, plaintiff said that she would be out of the office for a "few weeks due to an unavoidable circumstance." (A56.) When Pettit opened the email on Monday, April 4, he replied to express concern for plaintiff's welfare and to ask that she contact him immediately. (A51.) Plaintiff did not respond. (A51.)

Plaintiff testified, admitting that her travel arrangements had been made in March. (A56.) She claimed that her trip had been delayed from December because of an office incident in which an electric fan

7

blew a powdered substance into her eyes in late December 2010, requiring medical treatment in January and February 2011. (A52, A57.) She did not notify anyone of any such incident, however, until 38 days later, and she did not complete required paperwork regarding the alleged incident until after she was interrogated about the current disciplinary charge. (A57-58.)

Plaintiff testified that Morini told her that the approval of her FMLA leave was "open ended" and that she in turn informed Pettit in March 2011 that she intended to take that leave in the very near future. (A52.) However, though she testified that her travel arrangements had been made in March (A56), she also testified that she learned she needed to visit her mother while she was on vacation, at which point she sent Pettit the April 2 email (A52). Plaintiff admitted that she did not contact Pettit by phone regarding her leave, and did not contact Morini at all. (A52.)

The arbitrator found Pettit and Morini's testimony credible and plaintiff's testimony generally not credible, based on their demeanor

8

and the internal consistency of their statements. (A54-55.)[2] After reviewing the testimony and evidence, the arbitrator rejected plaintiff's claim that she had been told that the conditional approval of her leave was "open ended," noting that she had been informed of her rights and obligations in writing, and thus knew or should have known that she was required to notify the Department as soon as she knew when she needed to take the leave. (A59.) The arbitrator then determined that plaintiff's "first and only communication with Mr. Pettit about taking leave in April was on April 2, 2011, days or perhaps even weeks after she knew when she would be taking the leave." (A57.) The arbitrator concluded that plaintiff sent Pettit an email on a Saturday, just two days before her flight, because she "did not want to endure any scrutiny about when she was aware of the need to take FMLA leave or documentation requirements." (A59.) In summary, the arbitrator found that the case was "in its essence, about the failure of [plaintiff] to

_____

[2] In addition to the testimony noted above, plaintiff stated that she loved her job and that her colleagues were good people to work with, but also that colleagues killed her plants, that Pettit did not care about her medical problems, that she believed she was being followed by the State, and that she was afraid to tell anyone at work where she is going when she leaves the office. (A53.)

clearly state . . . she needed to take her FMLA leave that was already conditionally approved." (A59.) Accordingly, he sustained the charge that plaintiff was absent from work without authorization. (A60.)

The arbitrator also upheld the termination of plaintiff's employment. He noted that plaintiff had been suspended for ten days for "a serious time and attendance violation two years earlier," and that plaintiff here once again engaged in "serious misconduct" by taking leave without authorization for an extended period. (A63.) He thus upheld the determination. (A64.)[3]

## D.   State Court Proceedings

In June 2012, plaintiff sought to vacate the arbitration award by timely filing a petition in New York State Supreme Court. *See* N.Y. C.P.L.R. 7511. However, she did not timely serve the petition on the arbitrator and the Department, the respondents in the matter.

_____

[3] The full decision in defendant's file contains two pages with a signature block for the arbitrator; the page numbered 17 does not have a signature but contains the remainder of the paragraph begun on page 16 (A63) and a concluding paragraph. The page numbered 19 does have a signature but not the additional text; it is this page only that is included in the district court filings (A64). (There is no page numbered 18 in the copy of the decision in defendant's file.) For the Court's information, the page numbered 17 is annexed to this brief.

Therefore, in May 2013, she asked the state court to extend her time to serve the respondents pursuant to N.Y. C.P.L.R. 306-b, which permits extensions "upon good cause shown or in the interest of justice." (A24.)

The state court held that she failed to satisfy either requirement. Plaintiff failed to satisfy the good-cause requirement because she did not show that she exercised reasonable diligence in attempting to serve respondents. (A26.) And plaintiff failed to satisfy the interest-of-justice requirement either; although certain factors weighed in her favor, including the lack of prejudice to respondents, the court found that "[m]ost importantly, the petition fails to demonstrate a meritorious cause of action" to vacate the award. (A27.) *See* N.Y. C.P.L.R. 7511(b). The petition alleged that the arbitrator was biased, did not properly credit plaintiff's evidence and testimony, and was not "well-acquainted with the [FMLA]." (A27.) The court rejected the first of these claims as unpreserved and the remainder as conclusory. (A27-28.) It therefore denied plaintiff's motion for an order extending her time to serve respondents. (A28.)

**E.     Proceedings and Decision Below**

Plaintiff then commenced this action, alleging that the Department interfered with her rights under the FMLA by disciplining her for using approved FMLA leave and retaliated against her by terminating her employment. (A7-8, ¶¶ 24, 28.) The Department moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the arbitration decision had preclusive effect on plaintiff's FMLA claims in federal court. (N.D.N.Y. ECF No. 10.) Specifically, defendant argued that plaintiff's claims were precluded by collateral estoppel because the arbitration decision resolved against her the controlling factual question of whether plaintiff notified the Department that her leave was for FMLA purposes. (A18.)

The court below granted the motion to dismiss. Initially, it noted that the arbitration decision could be considered on the motion to dismiss as both integral to the complaint and a document of which the court could take judicial notice. (A96.) Plaintiff does not challenge this ruling on appeal.

The district court then held that the arbitration decision had preclusive effect. (A96.) It recognized the holding of the United States

Supreme Court in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), that a plaintiff's claim of racial discrimination under Title VII of the Civil Rights Act is not foreclosed by the prior submission of that claim to arbitration, if the arbitrator lacked authority to resolve Title VII claims. The district court nonetheless agreed with defendant that *Gardner-Denver* did not prevent it from applying collateral estoppel in this case because it was giving preclusive effect only to the arbitrator's factual finding, as opposed to any resolution of plaintiff's federal claims under the FMLA. (A96, referring to A19.)

The arbitrator's factual finding, the district court determined, was entitled to preclusive effect for two reasons. (A97.) First, plaintiff had a full and fair opportunity to litigate the issues: at the arbitration proceeding, plaintiff introduced documentary evidence, testified on her own behalf, cross-examined the Department's witnesses, and submitted a post-hearing brief. (A96-97; *see* A16-17, A19.) Second, there was an identity of issues, because at the arbitration hearing, "Plaintiff relied exclusively on her alleged compliance with the FMLA" in arguing that she was not guilty of being absent from work without authorization, and the arbitrator "specifically and repeatedly found that Plaintiff never

13

gave adequate notice of her intent to take leave for purposes of the FMLA." (A97; *see* A17, A19.) The arbitrator's factual finding regarding lack of notice was thus dispositive of plaintiff's FMLA claims in the present action. (A97.)

Finally, the district court also gave preclusive effect to the New York State Supreme Court decision that found plaintiff's challenge to the arbitration award to be non-meritorious. (A97.)[4]

This appeal followed.

## STANDARD OF REVIEW

This Court reviews a dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Id.* However, a court is not bound to accept "mere conclusory statements . . . or a legal conclusion couched as a factual allegation," and must "draw on its judicial experience and common sense" to determine "whether a complaint states a plausible claim for

_____

[4] Because the preclusive effect of the arbitration decision is dispositive of this appeal, this Court need not reach the correctness of this holding.

14

relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## SUMMARY OF THE ARGUMENT

The viability of plaintiff's FMLA claims turns on whether she gave adequate notice that her absence was for FMLA purposes. That factual question was already decided against her after an arbitration hearing at which she was represented by counsel, presented evidence, cross-examined witnesses, and submitted a brief. To protect the Department against defending multiple actions and to conserve judicial resources, plaintiff should be collaterally estopped from arguing that she gave adequate—or indeed any—notice that her absence from work from April 4 to May 20, 2011, had anything to do with her earlier request to the Department's Personnel Director for FMLA leave. Contrary to plaintiff's claims, not only can an arbitrator's factual finding be given preclusive effect through collateral estoppel, but this arbitrator's factual finding was properly given preclusive effect here, because plaintiff had a full and fair opportunity to litigate the factual issue of what notice she provided the Department. Moreover, the arbitrator's factual finding is

necessarily fatal to plaintiff's FMLA claims. The Court should therefore affirm the district court's judgment dismissing the complaint.

## ARGUMENT

### THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT AS BARRED BY COLLATERAL ESTOPPEL

The district court properly held that plaintiff was collaterally estopped from claiming that she notified the Department that she was taking leave for FMLA purposes. Having failed to give notice, plaintiff failed to invoke the protections of the FMLA. Dismissal of the complaint should be affirmed.

### A. Plaintiff Is Collaterally Estopped from Arguing that She Gave Notice that She Was Taking Leave for FMLA Purposes.

The district court properly applied the doctrine of collateral estoppel in giving preclusive effect to the arbitrator's factual finding that plaintiff did not give any notice that her absence was for FMLA purposes. First, that factual finding was within the arbitrator's agreed-upon powers, and thus did not implicate Supreme Court decisions that involve arbitrators' legal conclusions on matters outside the arbitration

16

agreement. Second, plaintiff had a full and fair opportunity to litigate
the issue of notice.

> **1.   Preclusive effect may be given to an arbitration
> decision under the doctrine of collateral
> estoppel.**

The district court properly found that the doctrine of collateral
estoppel was available in this case, notwithstanding that the decision
giving rise to estoppel was made by an arbitrator. "Under either federal
law or New York State law, collateral estoppel, or issue preclusion, bars
the relitigation of an issue that was raised, litigated, and actually
decided by a judgment in a prior proceeding, regardless of whether the
two suits are based on the same cause of action." *Postlewaite v.
McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003). This doctrine
"preclude[s] parties from contesting matters that they have had a full
and fair opportunity to litigate," which "protects their adversaries from
the expense and vexation attending multiple lawsuits, conserves
judicial resources, and fosters reliance on judicial action by minimizing
the possibility of inconsistent decisions." *Montana v. United States*,
440 U.S. 147, 153-54 (1979). To further these purposes, this Court has
held that "collateral estoppel can be predicated on arbitration

proceedings." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *accord Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 268 (2d Cir. 1997) (giving preclusive effect to arbitrator's decision despite decision not having been confirmed by a state court); *Benjamin v. Traffic Executive Assoc. Eastern Railroads*, 869 F.2d 107, 111 (2d Cir. 1989).

Plaintiff argues incorrectly (Br. at 10) that the arbitrator's decision cannot be given preclusive effect because of a line of U.S. Supreme Court cases. But those cases are inapposite because they do not involve giving preclusive effect, under the doctrine of collateral estoppel, to a specific factual conclusion that was clearly within the arbitrator's powers to determine. Rather, in *Alexander v. Gardner-Denver Co.*, the Supreme Court considered the preclusive effect of an arbitration decision that effectively rejected an employee's claim of racial discrimination, though it did not mention the claim at all, not even to make any factual findings related to it. 415 U.S. 36, 42-43 (1974). There, the arbitrator had been specifically empowered to address contractual claims, but not Title VII claims. The Supreme Court thus held that the arbitrator's implicit rejection of plaintiff's racial discrimination claim under the contract could not preclude the

employee from bringing a claim of racial discrimination under Title VII. *Id.* at 46 n.6; *see 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 262 (2009).

As this Court has noted, the *Gardner-Denver* "line of cases has been called into question by a more recent line of Supreme Court cases that permit arbitration agreements to foreclose access to federal courts," thus "implicitly giv[ing] arbitrations preclusive effect." *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 311 (2d Cir. 2005). Indeed, the Supreme Court subsequently sharply limited the applicability of the *Gardner-Denver* line of cases, stating that they "included broad dicta that were highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights," criticisms that "rested on a misconceived view of arbitration that this Court has since abandoned." *14 Penn Plaza LLC*, 556 U.S. at 265.

This Court need not address the continued viability of *Gardner-Denver*, however, because this case does not involve a question about the scope of the arbitrator's authority. As the Supreme Court has stated, *Gardner-Denver* turned on whether the arbitrator could enforce the federal statute that the plaintiff later sought to vindicate in federal court. *14 Penn Plaza LLC*, 556 U.S. at 262, *citing Gardner-Denver*,

19

415 U.S. at 262. But here, the district court relied not on an arbitrator's resolution of plaintiff's FMLA claims, but rather the arbitrator's resolution of a factual finding that in turn allowed the district court to resolve those claims. And there is no question that the arbitrator's resolution of the critical factual issue was within the arbitrator's agreed-upon authority to "render determinations of guilt or innocence" in disciplinary grievances. (A72.) Therefore, *Gardner-Denver* does not bar the application of collateral estoppel. Nor does *14 Penn Plaza*, as plaintiff claims (Br. at 24), because that case merely discusses the *Gardner-Denver* line of cases in the manner described above, en route to a related holding. *See* 556 U.S. at 274 (holding enforceable "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims"). This Court should therefore apply its existing precedent holding that arbitration decisions may generally be given preclusive effect. *See Boguslavsky*, 159 F.3d at 720; *Jacobson,* 111 F.3d at 268; *Benjamin*, 869 F.2d at 111.

Plaintiff makes two other arguments why the law of preclusion is unavailable here, both of which are mistaken. First, because this case can be resolved solely on the basis of collateral estoppel, the Court need

20

not reach questions relevant only to the res judicata argument made below, including whether the arbitrator was empowered to rule on FMLA claims (*see* Pl. Br. at 7-15, 16-22). Second, this Court's decision in *Benjamin* does not compel a different conclusion (*see* Pl. Br. at 23-24). As plaintiff herself states (Br. at 24), one of the factors that this Court relied on in *Benjamin* was that "there is no question regarding the [board of] arbitrators' authority." 869 F.2d at 114. But here, there is—or should be—no question regarding the arbitrator's authority to "render determinations of guilt or innocence" in disciplinary grievances (A72), which naturally requires a determination of the underlying facts. And it is those facts that the district court relied on here. Contrary to plaintiff's claim, then, *Benjamin* supports the district court's decision.

Other aspects of this Court's reasoning in *Benjamin* also support the application of collateral estoppel in this case. This Court relied on "[t]he policies behind collateral estoppel," holding that prohibiting relitigation of the arbitration decision avoided confusion, conserved resources, and fostered finality. 869 F.2d at 111-12. It also looked favorably on the procedural protections afforded to the parties, noting that the parties agreed to the procedures; could present oral and

21

written testimony, submit documentary evidence, cross-examine witnesses, and brief the issues; and received a detailed decision. *Id.* at 109-10, 113. Finally, this Court noted "the nature of the issue . . . is much more akin to the law of the shop" than to constitutional issues. *Id.* at 113. All of these factors support the availability of collateral estoppel in this case as well: prohibiting relitigation serves the same purposes; the parties agreed to very similar protections in the collective bargaining agreement; and the nature of the issue was an employee disciplinary grievance, which is a classic subject for employment arbitration. Thus, the district court properly found that the doctrine of collateral estoppel was available in this case.

### 2. Plaintiff had a full and fair opportunity to litigate the issue of notice in the arbitration proceeding.

The district court also properly applied the doctrine of collateral estoppel to find that plaintiff was precluded from arguing that, in connection with her absence from April 4 to May 20, 2011, she notified her employer that she was taking FMLA leave. The identical issue of plaintiff's notice was decided in the arbitration proceeding, and plaintiff

had a full and fair opportunity to litigate that issue before the arbitrator.

This Court does not appear to have determined whether, in federal-question cases, state law governs the preclusive effects of arbitration decisions. *Cf. Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 264, 266 (2d Cir. 1997) (applying state law in diversity action regarding preclusive effect of unconfirmed state arbitration proceeding).[5] But the Court need not do so here because the elements of collateral estoppel are the same under New York and federal law. *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003). And even if federal law controls, state court decisions are instructive.

There are only two requirements for the application of collateral estoppel: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli*

---

[5] As with quasi-judicial state administrative decisions, however, applying state law to determine the preclusive effect of state arbitration decisions would enforce repose and further federalism. *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798-99 (1986). Thus, state law likely does govern the preclusive effect of prior proceedings.

*Lilly & Co.*, 65 N.Y.2d 449, 455 (1985). Establishing identity of issues is the burden of the party seeking to invoke collateral estoppel, while establishing a lack of a full and fair opportunity to contest the prior determination is the burden of the party seeking to avoid it. *Matter of Dunn*, 24 N.Y.3d 699, 704 (2015).

The New York Court of Appeals has held that in employee disciplinary cases like this one, collateral estoppel bars relitigation of factual questions regarding the employee's conduct. For instance, in one case, an arbitrator found that an employee had engaged in insubordinate acts. *In re Claim of Ranni*, 58 N.Y.2d 715, 717 (1982). The employee subsequently applied for unemployment, but an administrative law judge denied the application, holding himself bound by the arbitrator's factual finding of insubordination. *Id.* The Court of Appeals upheld the denial of unemployment benefits, stating that the law of preclusion "is applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim." *Id.* Thus, where an arbitrator had determined that an employee was guilty of insubordination, the employee "was precluded from relitigating [the] factual issue" regarding "commission of the underlying acts" in the

24

unemployment proceeding. *Id.* at 717-18. And once the "fact of insubordination" was established, the administrative law judge could deny unemployment benefits by "making the legal conclusion that claimant was discharged for misconduct." *Id.* at 718.

The New York Court of Appeals has also required courts, as well as agencies, to give preclusive effect to an arbitrator's factual findings. The case of *In re Claim of Guimarales* also involved an arbitrator's factual finding that an employee had been insubordinate and an unemployment determination that was then challenged in state court. 68 N.Y.2d 989, 991 (1986). However, there the Unemployment Insurance Appeal Board did not give preclusive effect to the arbitrator's factual findings, and on judicial review, the Appellate Division upheld that determination. *Id.* The Court of Appeals overturned the Appellate Division's decision, holding that "[t]he Appellate Division and the Appeal Board erred in not giving collateral estoppel effect to the arbitrator's factual findings regarding claimant's conduct and to his conclusion of insubordination." *Id.*

Thus, in this case, state courts would give preclusive effect to the arbitrator's factual finding that plaintiff gave no notice that she was

taking leave for FMLA purposes. And the district court was correct to do the same.

**B.    Because Plaintiff Failed to Give Notice that She Was Taking Leave for FMLA Purposes, She Cannot Bring Claims Under the FMLA.**

Moreover, the district court also properly concluded that the arbitrator's factual finding in turn required dismissal of plaintiff's FMLA claims. Plaintiff did not give the Department any information prior to her weeks-long absence from which it could have determined that the absence was to care for her mother and was related to her earlier request for FMLA leave. The district court therefore properly held that plaintiff's complaint failed to state an FMLA claim.

Under the FMLA and its regulations, employees are responsible for timely notifying their employer that they intend to take FMLA leave. 29 C.F.R. § 825.301(b). Notice should be given not less than thirty days in advance when possible, and as soon as practicable otherwise, including when the need is unforeseeable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R §§ 825.302(a), 825.303(a). When giving notice, the employee "must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the

26

employee fails to explain the reasons, leave may be denied." 29 C.F.R. § 825.301(b).

Because leave may be denied if notice is inadequate, "[a]bsent the required notice, the employer's duty to provide FMLA leave is not triggered." *Brown v. Kan. City Freightliner Sales, Inc.*, 617 F.3d 995, 997 (8th Cir. 2010); *accord Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005). Even where employees are ill and in contact with their employers, they must provide their employers "with a reason to differentiate the absence from ordinary sick days, or even possibly malingering," to invoke the FMLA's protections. *Brown*, 617 F.3d at 998. If no adequate notice is provided in a timely fashion, then employees may be disciplined for being absent, notwithstanding their subsequent attempts to invoke the FMLA. *Id.* at 997 (affirming grant of summary judgment to employer where fired employee did not adequately notify employer that employee sought FMLA leave rather than sick leave); *Walton*, 424 F.3d at 486 (same); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008-09 (7th Cir. 2001) (same); *see also Golden v. N.Y. City Dep't of Envtl. Prot.,* 354 Fed. Appx. 577, 579 (2d Cir. 2009) (summary order) (affirming grant of summary judgment to employer on

27

FMLA claim where employee "failed to provide timely notice of leave for a serious medical condition"). And employees who fail to invoke the FMLA cannot show that their employer actually "considered [their] FMLA leave and request to return a negative factor in its decision." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006).

This law is controlling here. While plaintiff initially sought leave under the FMLA by contacting the Department's personnel administrator, Pamela Morini, plaintiff did not specify any dates for her leave at that time. And as the arbitrator expressly found, when plaintiff thereafter took leave, she failed to provide timely—or, indeed, any— notice that she was taking leave for FMLA purposes. Indeed, she had no further communication with Ms. Morini, and nothing in the communications that the arbitrator found she had with her supervisor, Michael Pettit, connected her weeks-long absence to the FMLA at all, let alone her earlier request for FMLA leave. As the arbitrator stated, plaintiff's "first and only communication with Mr. Pettit about taking leave in April was on April 2, 2011, days or perhaps even weeks after she knew when she would be taking the leave." (A57.) Moreover, that communication was in the form of an email that made no mention of the

28

FMLA or even of plaintiff's mother's illness (A51, A56). Instead, plaintiff wrote only that she would be out of the office for a "few weeks due to an unavoidable circumstance." (A56.)

The district court thus correctly held that plaintiff failed to give the Department sufficient information to allow it to determine that plaintiff's absence was related to the FMLA, as required under the regulation. 29 C.F.R. § 825.301(b). It is true that in December 2010, plaintiff had received approval to take FMLA leave at a yet-to-be-determined future date, conditional on obtaining medical documentation of her mother's condition. (A6 ¶¶ 8-10, A51.) But the arbitrator rejected plaintiff's claim that she had been told this approval was open-ended, with no further requirement that she notify the Department of her leave, and instead credited testimony that plaintiff had been given written instructions regarding her FMLA obligations. (A59.) Despite those instructions, plaintiff made no mention of her mother in the email that she sent on Saturday, two days before commencing an absence of almost seven weeks. She gave no explanation at all other than referring to "an unavoidable circumstance." (A56.) Faced with that bare statement, the Department

29

was unable to determine whether plaintiff was absent because she was sick, because her mother was sick, because she was dealing with personal matters, because she was malingering, or because of some entirely different reason. *See Brown*, 617 F.3d at 998. And because the Department had no reason to know that plaintiff was absent because of her mother's illness, its duty to provide FMLA leave was not triggered. The court below therefore correctly granted defendant's motion to dismiss the complaint, and this Court should affirm.

## CONCLUSION

The judgment below should be affirmed.

Dated:  Albany, New York
          November 18, 2015

                               Respectfully submitted,

                               ERIC T. SCHNEIDERMAN
                                 *Attorney General of the*
                                 *State of New York*
                               Attorney for Defendant-Appellee

           By:   /s *Kate H. Nepveu*
                               KATE H. NEPVEU
                               *Assistant Solicitor General*

                               Office of the Attorney General
                               The Capitol
                               Albany, New York 12224
                               Telephone (518) 776-2016

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
KATE H. NEPVEU
  *Assistant Solicitor General*
     *of Counsel*

31

other serious types of misconduct that is prejudicial to the effectiveness and efficiency of its operations.

I believe the State has more than adequately made the case that this single proven charge, standing alone, given prior discipline, warrants termination from employment.

## Award

The grievance is granted in part and denied in part. Ms. Siddiqua is guilty of Charge 1 and terminated from employment. She is not guilty of Charge 2.

_____<br>
E. David Hyland<br>
Impartial Arbitrator

State of New York    )
                   ) ss.:
County of New York  )

I, E. David Hyland, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed the foregoing instrument, which is my award.

_____

Dated:    April 5, 2012_____